IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN LA LUZ-JIMENEZ [3],<br><br>Defendant. | CRIMINAL NO. 14-719 (GAG) |

## REPORT AND RECOMMENDATION

### INTRODUCTION

On August 13, 2015, a federal Grand Jury returned a three count Indictment against defendant Christian La Luz-Jiménez [3] ("Defendant La Luz"), and two other co-defendants, charging them with aiding and abetting, in interference with commerce by robbery, in violation of Title 18, United States Code, Sections 1951 and 2; aiding and abetting in the use of a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Sections 924(c) and (j) and 2; and aiding and abetting in the theft of a firearm, in violation of Title 18, United States Code, Sections 924(I) and 2.   (Docket No. 221).

On October 15, 2015, Defendant La Luz filed a Motion to Suppress moving the Court to suppress all post-arrest statements made by Defendant La Luz because they were given pursuant to use immunity under Fed.R.Crim.P. 11 or what is commonly known as a "proffer letter." In essence, Defendant La Luz posits that everything that he said after his attorney Víctor Ramos-Rodríguez orally agreed with the Government to submit to debriefings, whether video recorded or not, is covered by the protections of Fed.R.Crim.P. 11 and they cannot be used against Defendant La Luz in the government's case in chief,

_____

regardless of whether the verbal agreement was received in writing during the course of the interviews.   (Docket No. 248).

On October 26, 2015, the government filed its Response in Opposition to Defendant's Motion to Suppress arguing Defendant's statements are admissible because Defendant understood his rights, waived them and made a confession statement while aware the proffer was not in effect and in the presence of counsel. (Docket No. 252).

On the same day, the presiding District Judge referred Defendant La Luz' Motion to Suppress to this United States Magistrate Judge for hearing and report and recommendation. (Docket Nos. 254 and 255).

On November 4, 2016, Defendant filed a Reply to the Government's Response re-asserting the arguments he made in his Motion to Suppress and moving the Court to suppress all post-arrest statements as inadmissible. (Docket No. 261).

After several motions to continue, on January 14, 2016, the suppression hearing was held.  The direct examination of FBI SA Devin Kowalski ("SA Kowalski") began. Several exhibits were admitted.   Due to some mistakes in the transcript and translation of the video, the suppression hearing was continued to make the necessary corrections. (Docket No. 285).

On January 28, 2016, the suppression hearing was called but not held.   Defense counsel and the prosecutor met in chambers to discuss the status of the transcript. The parties requested the continuance of the suppression hearing in light of the issues with the transcript. (Docket No. 291).

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 3
_____

After some procedural matters, a Status Conference was held on April 4, 2016 with defense counsel and AUSA Jeanette Mercado, who was the new AUSA assigned to the case. The status of the transcript was discussed. The parties requested additional time to meet and reach an agreement as to the portions of the transcript in dispute. (Docket No. 304).

After several continuances were requested and granted, on October 19, 2016 the suppression hearing was held. The testimony of SA Kowalski continued on behalf of the government and the government then submitted its case. Defense counsel called attorney Ramos-Rodríguez to testify. Direct and cross-examination conducted. Defendant submitted his case. The Government called SAUSA Normary Figueroa-Rijos ("SAUSA Figueroa") as a rebuttal witness. Arguments were heard from the parties. (Docket No. 340).

On November 3, 2016, an Order was issued requesting the parties to file post-hearing briefs in thirty (30) days, including the applicability to this case of United States v. Deantoni, 171 F.Supp. 3d 477 (E.D. Virginia 2016). (Docket No. 341). Both parties timely complied. (Docket Nos. 346 and 350).

## APPLICABLE LAW

The government did not present any case law contrary to the case law submitted by Defendant La Luz in his Motion to Suppress and subsequent motions, which is applicable to proffer letters. The government briefly mentioned some of the case law submitted by Defendant on proffer agreements and cited other case law on Miranda warnings and the voluntariness of statements. Finding the case law submitted by

Defendant La Luz in the Motion to Suppress to be on point, and not to re-invent the wheel, the relevant portions of the same are incorporated herein below from Docket No. 248, pages 2-5.

The government may offer a defendant use immunity in exchange for his proffered statements, and statements made by defendants during proffer sessions or pursuant to proffer letters or agreements are inadmissible at trial. Fed.R.Crim.P. 11; Fed.R.Evid. 410; United States v. Vélez, 354 F.3d 190, 194 (2d. Cir. 2004). "The underlying purpose of Rule 410 is to promote plea negotiations by permitting defendants to talk to prosecutors without sacrificing their ability to defend themselves if no disposition agreement is reached." United States v. Barrow, 400 F.3d 109 (2d Cir. 2005). It should go without saying that, once the government requests and agrees to debrief a suspect or a defendant under Rule 11, it must dutifully honor its obligation not to use the defendant's statements against him in its case in chief at trial.

"It is well-settled that proffer and plea agreements are construed according to principles of contract law." United States v. Pollack, 91 F.3d 331, 334 (2d Cir. 1996). "[O]nce a defendant's good-faith compliance with the terms of the agreement is established, the state must perform on its side and any attempt by the state to breach the agreement is *per se* a bad faith prosecution." Rowe v. Griffin, 676 F.2d 524, 528 (11th Cir. 1982). In determining whether a plea agreement has been breached, we look to the reasonable understanding of the parties and resolve ambiguities against the government. In re Altro, 180 F.3d 372, 375 (2d Cir. 1999).

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 5
_____

To establish entitlement to relief from prosecution on this basis, "the defendant bears the burden of proving that there was a mutual manifestation of assent – either verbally or through conduct – to the agreement's essential terms." United States v. Jiménez, 256 F.3d 330, 347 (5th Cir. 2001).   Such an agreement may be unwritten, based upon oral statements. Id. It may also be implied from the circumstances. Hercules v. United States, 516 U.S. 417, 24 (1996); United States v. Barford, 2004 WL 5645086 (E.D. Missouri).

Even assuming *arguendo* that there was some flaw in the ironing out of the circumstances under which a defendant's post-arrest statements would be taken, the defendant would still be entitled to relief. "Pursuant to the federal use immunity provisions, 18 U.S.C. Sec. 6001-6005, a formal grant of testimonial immunity in the federal system can only be made by the Attorney General of the United States, with approval of the court, pursuant to express statutory authorization. However, courts have developed the concept of "nonstatutory" immunity whereby the courts will enforce informal or procedurally flawed grants of immunity on equitable grounds. Rowe v. Griffin, 676 F.2d at 524; United States v. Weiss, 599 F.2d 730 (5th Cir. 1979); United States v. Calimano, 576 F.2d 637 (5th Cir. 1978); United Sates v. Sanderson, 498 F.Supp. 273 (M.D. Fla. 1980); United States v. D'Apice, 664 F.2d 75, 78 n.6 (5th Cir. 1981). These cases indicate that, where the government has entered into an agreement with a prospective defendant and the defendant has acted to his detriment or prejudice in reliance upon the agreement, "as a matter of fair conduct, the government ought to be required to honor such an agreement." Rowe v. Griffin, 676 F.2d at 527." United States v.

Carpenter, 611 F.Supp. 768, 775 (N.D. Georgia 1985).

In United States v. Melvin, 730 F.3d 29 (1st Cir. 2013), the Court of Appeals for the First Circuit had occasion to review the parameters which apply to the use immunity provisions contained in the standard government proffer letters. "Informal immunity agreements, such as proffer agreements, 'are shaped by the language of the contract conferring the immunity.' United States v. Hogan, 862 F.2d 386, 388 (1st. Cir. 1988). The meaning of the proffer agreement presents a question of law, which engenders *de novo* review. *See, e.g.*, United States v. Atwood, 963 F.2d 476, 478 (1st Cir. 1992). In performing this interpretative task, we are guided chiefly by contract law principles. *See* United States v. McLaughlin, 957 F.2d 12, 16 (1st Cir. 1992); Hogan, 862 F.2d at 388." *See also*, United States v. Jiménez-Benceví, 788 F3d. 7, 15 (1st Cir. 2015).

"Under the doctrine of *contra proferentem* an ambiguous term in a contract normally should be construed against the interest of the drafter, and this praxis applies to proffer agreements." Melvin, 730 F.3d at 37. Of particular importance here, the First Circuit emphasized in Melvin that "proffer agreements are *sui generis*, and the contract law principles that courts use in construing them are glossed with a concern that the defendant's consent to appear at a proffer session should not become a lever that can be used to uproot his right to fundamental fairness under the Due Process Clause. … *Unlike the normal commercial contract, it is due process that requires that the government adhere to the terms any immunity agreement it makes.*" Id. (citations omitted) (emphasis ours).  "The short of it is that the government, having agreed not to use information provided by the defendant at the proffer session, reneged on that promise

and used such information at trial. We will not countenance that sleight of hand. As we have said, 'the government must turn square corners when it undertakes a criminal prosecution.' Ferrara v. United States, 456 F.3d 278, 280 (1st. Cir. 2006)." Id; see also United States v. Scott, 12 F.Supp. 3d 298, 302 (D. Massachusetts 2014).

The Court supplements the case law submitted by Defendant La Luz with the case of United States v. Deantoni, 171 F.Supp. 3d 477 (E.D. Va. 2016), which was decided after Defendant's Motion to Suppress, and other related pleadings, were filed and which both parties addressed in their post-hearing briefs. (Docket Nos. 346 and 350).

In Deantoni, Defendant moved the Court to exclude any reference to his statements made during voluntary interviews with the government pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f).  Prior to the first video conference between Defendant Deantoni and the prosecuting attorneys on December 12, 2014, the government sent Defendant a standard proffer letter laying out the proposed terms of that meeting. That proffer letter provided that Defendant's statements would not be used in the government's case-in-chief, but could be used for cross-examination or rebuttal if the Defendant testified inconsistently at trial. The proffer letter further provided that Defendant Deantoni's proffer session with the government was "construed to have been an instance of compromise negotiations or plea discussions, [the Defendant] knowingly and voluntarily waives all rights [the Defendant] has pursuant to Federal Rules of Evidence 408 and 410 and Federal Rule of Criminal Procedure 11(f) that would otherwise prohibit the use against [the Defendant] of statements made during such negotiations or discussions." Defendant Deantoni and his attorney at the time did

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 8
_____

not sign and return the proffer agreement until December 18, 2014, six days after the video conference with the prosecuting attorneys had taken place.

The Court in <u>Deantoni</u> recognized that "[o]ne of contract law's fundamental doctrines is that there can be no agreement unless there is a 'meeting of the minds.'" <u>United States v. White</u>, No. 14-4678, 628 Fed.Appx. 848, 852 (4th Cir.2015) (*citing* <u>Charbonnages de France v. Smith,</u> 597 F.2d 406, 414 (4th Cir. 1979)). "Where 'substantial confusion' calls into mind whether there has been such a meeting of the minds over a plea bargain, there is no valid agreement to be enforced." *Id.* *487 (quoting <u>Houmis v. United States</u>, 558 F.2d 182, 183 (3d Cir.1977)). The Court reasoned that the proffer letter's language of Deantoni was unambiguous in contemplating one specific interview session with repeated reference to "*the* interview session." However, the Court ruled that the proffer letter did not contain any language referencing subsequent interview sessions, prior interview sessions, all interview sessions, or referring to any specific interview session by date. The proffer letter was therefore ambiguous as to *which* interview session the parties contemplated. Generally, when a proffer letter is properly executed immediately prior to an interview or proffer session, the proffer letter is held to be effective with respect to that interview or proffer session.[1]

---

[1] *See, e.g.,* <u>United States v. Smith</u>, 770 F.3d 628, 639-40 (7th Cir.2014) (waiver was effective where defendant signed proffer letter "prior to the beginning" of his proffer interviews); <u>United States v. Adejumo</u>, 772 F.3d 513, 525 (8th Cir.2014) (waiver was effective where proffer letter was signed "prior to the session," after review by defendant, his counsel, and explanation by the prosecuting attorney); <u>United States v. Parra</u>, 302 F.Supp.2d 226, 231 (S.D.N.Y.2004) (waiver effective where defendant "signed the Proffer Agreement at the initial session, and initialed the same Agreement at the two subsequent proffer sessions").

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 9
_____

The proffer letter at issue in <u>Deantoni</u> was not signed and returned until December 18, 2014, well after the proffer session had already taken place. Accordingly, the Court found that the proffer letter was fatally ambiguous as to which proffer session or interview it contemplated. The Court thus ruled that the government could not clearly establish whether Defendant Deantoni believed the proffer letter applied to the interview which took place on December 12, 2014, prior to execution of the proffer letter; the interview sessions which took place after execution of the proffer letter; or all of the defendant's interviews with the prosecuting attorneys. To this effect, the Court explained that the Court's supervisory role in regulating plea negotiations counsels this result. "Whereas the defendant is best placed to avoid the potential negative ramifications of testifying before a grand jury without an immunity agreement, the prosecuting attorney is best placed to avoid issues arising from ambiguity in proffer agreements. If the prosecuting attorney wants to be sure that the proffer agreement applied to any of the specific proffer sessions or interviews, they need only either ensure the defendant executes the agreement at the beginning of the proffer session or include clear language explaining that the proffer agreement applies to 'all interviews' or referencing specific interviews by date. Because the proffer letter must be construed severely against the government, and its language regarding the extent of the waiver is too vague to demonstrate a meeting of the minds, the Court found the proffer letter was not effective. Thus, the contents of any proffer sessions or interviews between Defendant [Deantoni] and the prosecuting attorneys, which were

_____

Case 3:14-cr-00719-GAG-CVR   Document 352   Filed 12/07/16   Page 10 of 17

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 10
_____

conducted for the purpose of negotiating a plea agreement, were excluded under Federal Rule of Evidence. 410 and Federal Rule of Criminal Procedure 11(f)." Deantoni, 171 F.Supp. 3d at 487.

## LEGAL DISCUSSION

It is clear from the evidence presented at the suppression hearing in the case at bar that both parties have different interpretations as to what a Rule 11 proffer letter means and its extent. However, "[i]n determining whether [[a] proffer] agreement has been breached, we look to the reasonable understanding of the parties and resolve ambiguities against the drafting party. In re Altro, 180 F.3d 372, 375 (2d Cir. 1999). As such, the Court cannot side with the government's position which in essence has no logic and would entail a violation of Defendant La Luz' Constitutional rights.

As the evidence shows, it is uncontested that counsel Ramos-Rodríguez is a competent and experienced defense counsel, both in state and federal courts, who has consistently and capably represented defendants in federal court over a period of thirty-five (35) years. Before that, counsel Ramos-Rodríguez was a state prosecutor for eight (8) years only handling criminal matters.

Counsel Ramos-Rodríguez testified at the suppression hearing that, after he was contacted by Defendant La Luz' family, he immediately contacted the SAUSA on duty. The discrepancy of whether counsel Ramos-Rodríguez spoke to SAUSA Daynelle Alvarez or SAUSA Figueroa is of no consequence because they both represented the government. It is uncontested that counsel Ramos-Rodríguez did speak to the SAUSA on duty (regardless of who it was) on the day of the arrest. Counsel Ramos-Rodríguez testified

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 11
_____

he procured with the government a standard Rule 11 proffer letter which would cover Defendant La Luz' conversations with the government thereafter. After some discussions, such an agreement was reached orally, with the understanding that a written proffer letter would be coming soon and the questioning could commence under those terms.[2]

As proffered by Defendant La Luz, it is commonplace, standard, and basic, the language is boiler-plate, and the conditions under which such interactions are carried out are well-known to both the government and defense counsel alike, to the point that the mere mention of Rule 11 makes clear to the parties the conditions which cover a debriefing without the need for the parties to even sit down and iron out a long drawn out contract. That the verbal agreement to proceed under the provisions of Rule 11 was not received in writing until after the beginning of the taking of the post-arrest statements is of no consequence, as argued by Defendant La Luz, because there was mutual assent. "To establish entitlement to relief from prosecution on this basis, a defendant must show that there was a mutual manifestation of assent – either verbally or through conduct. United States v. Jiménez, 256 F.3d 330, 347 (5th Cir. 2001). Such an agreement may be unwritten, based upon oral statements. United States v. Minn. Mining & Mfg. Co., 551 F.2d at 1112. It may also be implied from the circumstances. Hercules v. United States, 516 U.S. at 24." United States v. Barford, 2004 WL 5645086. Thus, attorney Ramos-

---

[2] The testimony of counsel Ramos-Rodríguez at the suppression hearing was consistent with the contents of his sworn statement which was submitted by Defendant La Luz in support of his Motion to Suppress. (Docket No. 248-2).

<u>United States of America v. Christian La Luz-Jimenez [3]</u>
<u>Criminal no. 14-719 (GAG)</u>
Report and Recommendation
Page 12
_____

Rodríguez' conversation with the duty SAUSA had important and binding legal consequences.

The interpretation given by Defendant La Luz and counsel Ramos-Rodríguez is the one commonly and logically given to proffer Rule 11 letters inasmuch as it is in accordance with its purpose and consonant with Defendant's Constitutional rights. As properly argued by Defendant La Luz, "this is not surprising, and in fact, could be fully anticipated: it would make absolutely no sense for an attorney in this district to allow a client, particularly one who is a suspect in the investigation into the murder of a police officer, to be questioned by law-enforcement officers without seeking the protection of Rule 11 which is extended as part of virtually all such interactions in this district. Indeed, it would have been tantamount to an abdication of his professional responsibility. *It would make even less sense for an attorney to seek the protections of Rule 11 for some portions of the proffer session he was about to submit and accompany his client to, and not for others.*" [Emphasis in original] (Docket No. 248, p. 6).

Thus, from the testimony of counsel Ramos-Rodríguez, it is clear that it was his believe that his client was proceeding under the traditional meaning of a Rule 11 proffer letter, to wit, that a Rule 11 proffer letter should be sought prior to submitting a client to a debriefing where he could potentially incriminate himself, particularly in a case like this one where there was a murder and Defendant La Luz could face the death penalty.

However, pursuant to the testimony of SAUSA Figueroa at the suppression hearing, the government seems to have had a different intent and interpretation. This could be attributed to SAUSA Figueroa's limited experience in federal criminal cases at

Case 3:14-cr-00719-GAG-CVR   Document 352   Filed 12/07/16   Page 13 of 17

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 13
_____

the time, a possible lack of communication with her supervisors at the United States Attorney's Office and what she communicated to counsel Ramos-Rodríguez at that moment. Pursuant to SAUSA Figueroa's account, before the government could extend any proffer letter to Defendant La Luz, the government had to know beforehand what Defendant knew and would say. Thus, pursuant to the government's theory, the agreement entered with Defendant La Luz was for him to first make a custodial statement pertaining to his own involvement without any protection, reserve the names of his co-conspirators and, then, when he was ready to enter into the proffer letter debriefing session, and only then, Defendant would reveal the identities of his co-conspirators. As such, Defendant La Luz' statements at the first custodial interrogation as to his own participation would not be protected, and the ones given after would be protected even though in essence both statements would be the same but for the names of the co-conspirators.

The Court cannot accept the government's theory in this case because it runs against the protections of Federal Rule of Criminal Procedure 11 because the Defendant could have already incriminated himself in the first custodial interrogation. It cannot be forgotten that, where the government has entered into an agreement with a prospective defendant and the defendant has acted to his detriment or prejudice in reliance upon the agreement, "as a matter of fair conduct, the government ought to be required to honor such an agreement." Rowe v. Griffin, 676 F.2d at 527. Carpenter, 611 F.Supp. at 775.

In other words, to accept the government's theory would mean that the government "would have the cake and eat it too." The government cannot have it both

Case 3:14-cr-00719-GAG-CVR   Document 352   Filed 12/07/16   Page 14 of 17

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 14
_____

ways. The court reminds the government that "[h]aving one's cake and eating it, too, is not in fashion in this circuit." United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985). *See also,* Melvin, 730 F.3d at 40.

It defies logic for a defense attorney as experienced as counsel Ramos-Rodríguez in federal criminal practice to agree to submit his client to questioning, first without Rule 11 protection, then to repeat the same interrogation immediately following the conclusion of the first interrogation and claim only protection for the second interrogation. This alleged pre-requirement of a Rule 11 proffer letter that a suspect has to tell the government what he has to say first, thereby irrevocably incriminating himself, runs against reason. Moreover, to uphold this interpretation would inevitably have the Court to conclude that counsel Ramos-Rodríguez was ineffective, conclusion for which there is no basis on the record.

The evidence shows that counsel Ramos-Rodríguez, prior to the debriefing on November 28, 2014, sought Rule 11 protection for Defendant La Luz prior to agreeing to submit him to an interrogation. As a matter of fact, counsel Ramos-Rodríguez testified at the suppression hearing that he would not have allowed Defendant La Luz to participate in the debriefing if he was not fully protected under Rule 11.

Moreover, it is uncontested that the proffer letter that was drafted by the government and forwarded to the defense in the instant case, which placed in writing the verbal agreement the government attorney had reached with the Defendant La Luz' legal representation prior to the first question being posed to Defendant by law-enforcement agents, was the standard proffer letter used in this district. See Exhibit C. A review of the

Case 3:14-cr-00719-GAG-CVR   Document 352   Filed 12/07/16   Page 15 of 17

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 15
_____

proffer letter shows that the terms of the proffer letter are clear and unambiguous. As such, they should control the admissibility of the statements at issue.

The proffer letter stated that Defendant "shall have the protection afforded by direct use immunity; that is, the United States agrees that no statements made, or other information provided by you, will be used against you directly in any criminal case in the District of Puerto Rico." Virtually every day in this district federal agents and prosecutors interview prospective defendants and witnesses upon the advice of their legal representation. With very few, if any, exceptions, such interviews are carried out under the provisions of Federal Rule of Criminal Procedure 11.

The Court agrees with Defendant that the fact that the production of the written proffer letter was delayed until midway through the debriefing is inconsequential, as verbal agreements are as valuable in this district as written ones. That the SAUSA and the defense counsel had different interpretations of Rule 11 cannot change what Defendant La Luz, in good-faith, understood to be his rights when he decided to participate in the debriefing with the government, particularly in light of the serious charges that he was facing. This is particularly so in view of the clear directive from the Court of Appeals of the First Circuit that proffer sessions and immunity agreements must be governed by principles of Due Process above and over those of contract law. Melvin, 730 F.3d at 29.

Finally, and in the alternative, Deantoni, 171 F.Supp at 477 provides a separate legal ground to bar the statements provided by Defendant La Luz in the proffer session

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 16
_____

solely in the basis of Federal Rules of Criminal Procedure 11 and Federal Rule of Evidence 410 and under this Court's supervisory rules.[3]

In view of the foregoing, it is recommended to the Court to find that all the statements Defendant La Luz made to law enforcement, after his attorney agreed with the government to submit to debriefings, whether video recorded or not, are covered by the protections of Federal Rule of Criminal Procedure 11 and cannot be used by the government against Defendant La Luz at trial, regardless of whether the verbal agreement was received in writing during the course of the debriefings.

## CONCLUSION

In view of the foregoing, it is recommended that Defendant La Luz' Motion to Suppress (Docket No. 248) be GRANTED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the

---

[3] The Court ruled that "proffer letter[s] must be construed severely against the government," rejected the applicability of the waiver, and ruled, on the basis of Rules 410 and 11 generally, as well as its "supervisory role," that the statements provided by the defendant during proffer sessions were inadmissible.

Case 3:14-cr-00719-GAG-CVR Document 352 Filed 12/07/16 Page 17 of 17

United States of America v. Christian La Luz-Jimenez [3]
Criminal no. 14-719 (GAG)
Report and Recommendation
Page 17
_____

second round").

   In San Juan, Puerto Rico, this 7th day of December of 2016.

          s/CAMILLE L. VELEZ-RIVE
          CAMILLE L. VELEZ-RIVE
          UNITED STATES MAGISTRATE JUDGE